## GREAT AMERICAN INDEMNITY CO. OF NEW YORK v. GARRISON et ux.

### No. 577.

District Court, E. D. Washington, Northern Division.

Feb. 20, 1948.

H. Earl Davis, of Spokane, Wash., for plaintiff.

Garvin & Frissel, of Spokane, Wash., for defendants.

DRIVER, District Judge.

Plaintiff, a New York Corporation, brought this action to recover from the defendants, individually, and as a marital community, money paid and expenses incurred, as surety, on the official bond of the defendant husband, Lyall L. Garrison, as the Treasurer of Clearwater County, Idaho.

The defenses tendered by the pleadings and the evidence are that the action is barred by the statute of limitations and that, in any event, the plaintiff is not entitled to recover from the marital community, or from the defendant wife.

The facts essential to a determination of the issues presented are virtually undisputed. Briefly stated, they are as follows:

Defendant, Lyall L. Garrison, was elected County Treasurer in 1932, and took office in January, 1933. He was re-elected and served successive, two-year terms, the last of which expired in January, 1945. Until January, 1941, his statutory, official bond was in the amount of $25,000, and the surety was a company other than plaintiff. At that time, his bond was increased to $50,000, and he executed an additional, official bond in the amount of $25,000, with plaintiff as surety. A bond in like amount, with plaintiff as surety, was furnished by Mr. Garrison for his last term of office, 1943–1945. Each bond was conditioned that he would faithfully perform all of his official duties and pay over all monies that might come into his hands by virtue of his office.

After the expiration of his last term, it was discovered that he was short in his accounts. An audit of his books showed that the shortage amounted to $27,794.52. Upon demand of Clearwater County, plaintiff paid its portion of the shortage, amounting to $13,897.26, on August 20, 1945.

At the trial, a public accountant, who had audited the books and records of Clearwater County each year during Mr. Garrison's incumbency as County Treasurer, testified that it was impossible to determine when, or how, the shortage occurred. The only other evidence on that point was the testimony of Mr. Garrison. He testified that some time during the year, 1936, he became aware that there was a shortage of approximately $12,000 in his accounts; that he had not taken any County funds, and did not know how the shortage occurred; that he concealed it in one way and another so that it was not discovered; and that in 1941, in a desperate effort to make up the shortage, he took $16,000 of County funds, went to Reno, Nevada, and there lost it all at the gaming tables of public gambling houses.

The defendants were husband and wife during all the time that Mr. Garrison served as Treasurer of Clearwater County.

There was no evidence that the marital community ever benefited directly, or indirectly, from any County funds, taken by the husband.

Mr. Garrison's bond application, which was signed by him, but not by his wife, contained an agreement on his part: "* * * to indemnify the Company [plaintiff] against any losses, damages, costs, charges, and expenses it may sustain, incur, or become liable for in consequence of the said bond, or any renewal thereof, or any new bond issued in continuation thereof or as a substitute therefor;"

■ Plaintiff instituted the present action on August 7, 1946. Defendants contend that the action is based upon a breach of the statutory duty of a County Treasurer, and, therefore, is governed by the three-year statute of limitations of the State of Washington. The statute, they maintain, commenced to run at the end of the term of office in which the cause of action arose. As supporting authority, they cite Pierce County v. Newman, 26 Wash. 2d ,63, 173 P.2d 127. The contention is based upon a misconception of the nature of the instant action, and the case is not in point. There, the County sued the Treasurer and the surety on his official bond. Here, the surety is suing the principal for reimbursement. In the present case, the cause of action accrued, and the statute of limitations began to run from the time the surety made the payment to Clearwater County. 50 Am.Jur., Suretyship, Sec. 242; Restatement, Restitution, Sec. 77b. Plaintiff made that payment on August 20, 1945, and started its suit on August 7, 1946. In view of the above-quoted, written contract, embodied in the bond application, the action would seem to be governed by the six-year statute of limitations, Rem.Rev.Stat. § 157, but if it be regarded as an action based upon an implied contract of a principal to reimburse his surety, then the three-year statute of limitations would apply, Rem.Rev.Stat. § 159. In either case, the action was brought within the time limited by law.

However, inherent in the situation here presented is the question whether at the time plaintiff paid the claim of Clearwater County, Mr. Garrison could have set up the statute of limitations as a defense to the whole, or a portion, of the claim. If a good defense existed, and was available to and known by the surety, it might well be urged that the surety, having failed to assert it, could not recover reimbursement from the principal on that portion of the claim then barred by limitation. See Restatement, Security, Sec. 108. Whether such a valid defense existed would depend upon the law of the State of Idaho. Mr. Garrison was elected and served his terms of office as Clearwater County Treasurer in that State; his official bond ran to the State; his official misconduct, which was the basis of the County's claim, occurred there; and it was there that demand for payment was made by the County upon the plaintiff, as surety on the bond.

In Idaho, an action against a public officer for loss of public funds in his custody is regarded as one grounded upon a liability created by statute and subject to the limitation imposed by Section 5-218, subparagraph 1, Idaho Code Annotated. The period of limitation is three years, and it commences to run at the expiration of the officer's term of office. Wonnacott v. Kootenai County, 32 Idaho 342, 182 P. 353; Canyon County ex rel. Griffiths v. Moore, 34 Idaho 732, 203 P. 466; City of St. Anthony v. Mason, 49 Idaho 717, 291 P. 1067.

The cited cases do not squarely decide whether the statute always starts to run at the expiration of the term of office in which the loss occurred, or, in case the offending officer has served two or more consecutive terms, at the end of his last term, where the loss was not discovered or discoverable by the exercise of reasonable diligence prior to that time. It is not necessary to decide the point here.

■ As stated above, there is no evidence as to how, or when, $12,000 of Mr. Garrison's shortage occurred. He testified at the trial that he discovered it some time during the year, 1936. (In a written confession, dated March 27, 1945, in evidence as an exhibit, he recited that the shortage first came to his attention "some time during the business year of 1935.") As trier of the facts, the Court has applied the

usual standards in determining the weight to be given Mr. Garrison's testimony. Among other things, the Court has considered his interest, as a party, in the outcome of the case, the impeaching effect of the record showing of his conviction of the felony of embezzlement, and the vagueness as to detail and the inherent improbability of his story with reference to the mysterious disappearance of the $12,000 of County funds. The Court does not believe his wholly uncorroborated testimony that upon discovering a shortage of $12,000 in his accounts, for which he was in no way to blame, he failed to disclose it to any one, but on the contrary, invited eventual, criminal prosecution by fraudulently concealing it year after year. As to that portion of the missing funds, the Court takes the view that the time of their loss is not satisfactorily shown by the evidence. The presumption, then, arises that the shortage occurred during Mr. Garrison's last term of office, which expired in January, 1945. 43 Am. Jur., Public Officers, Sec. 449. As to the remaining $16,000 of the shortage, it will be assumed that Mr. Garrison took it, as he testified that he did, in June, 1941. The term of office, which he was then serving, expired in January, 1943. Payment, upon demand of the County, was made by the plaintiff in August, 1945. The County's claim was not, therefore, at that time barred, in whole or in part, by the applicable three-year statute of limitations.

The plaintiff seeks to recover judgment against the marital community consisting of defendants, Lyall L. Garrison and Georgia C. Garrison, his wife, as well as against Mr. Garrison, individually. Under the Community Property laws of the State of Washington, the marital community is not a separate, legal entity, or juristic person, apart from the individual spouses, who compose it. Bortle v. Osborne, 155 Wash. 585, 285 P. 425, 67 A.L.R. 1152. However, where the wife is made a party to an action against the husband, the question of the community character of the debt, or obligation, may be determined by the Court. McDonough v. Craig, 10 Wash. 239, 38 P. 1034; Clark v. Eltinge, 29 Wash. 215, 69 P. 736; Woste v. Rugge, 68 Wash. 90, 122 P. 988.

Defendants contend that the question should be determined in accordance with the laws of the State of Washington, under the rule announced in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231. The cited decisions hold that in diversity cases, a Federal District Court must follow the applicable, state law, both statutory and common, but where there is a question whether the law of one state or another should be applied, the Federal Court must follow the conflict of laws rule prevailing in the state where the Court sits. Klaxon Co. v. Stentor Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462. In the present case, then, this Court should adopt the conflict of laws rule, which would be applied if the case were being tried in a Court of the State of Washington.

It is well settled in Washington that the liability of a marital community for a debt must be determined by the law of the place where the debt arose, or was incurred. La Selle v. Woolery, 14 Wash. 70, 44 P. 115, 32 L.R.A. 73, 53 Am.St.Rep. 855; Huyvaerts v. Roedtz, 105 Wash. 657, 178 P. 801; Van Geest v. Stocks, 198 Wash. 218, 88 P.2d 406; Meng v. Security State Bank, 16 Wash.2d 215, 133 P.2d 293. Community liability for a tort is governed by the law of the place where the tort was committed. Mountain v. Price, 20 Wash.2d 129, 146 P.2d 327. In the present case, then, in order to determine whether the community is liable, it will be necessary to examine the law of the State of Idaho.

Although Idaho has general community property statutes, see Idaho Code Annotated, Sections 31-906, 31-907, and 31-913, no statute, or decision, of a Court of that state has been cited by counsel on either side, and none has otherwise come to the attention of this Court as to whether a marital community is liable for the torts of the husband, committed in his official capacity, as an elected, public officer. Plaintiff cites Holt v. Empey, 32 Idaho 106, 178 P. 703, and Gustin v. Byam 41 Idaho 538,

240 P. 600, as establishing the rule that in Idaho, community property is liable to attachment and execution for the debts of the husband, whether incurred for his own use or for the benefit of the community. The debt of the husband involved in each of those cases was of a contractual character. There is nothing in them to indicate that the Idaho Supreme Court would apply the same rule to obligations of the husband sounding in tort in the face of the almost universally accepted principle that the marital community is not liable for the husband's torts, unconnected with community business, and for which the community receives no benefit. Even if the rule of the cited cases should be construed to apply to tort liabilities of the husband, it would not be controlling here. The question in the present case is whether the obligation to reimburse plaintiff, as surety, on Mr. Garrison's bond, is his separate obligation or the obligation of the marital community. The separate or community character of the obligation and the way in which its collection may be enforced are not one and the same thing. Since there is no decision of the Courts of Idaho on the point under consideration, this Court must do what an Idaho Court would do in similar circumstances, namely; ascertain how the question would be decided by the weight of authority in other jurisdictions.

 The general rule is that a marital community is not liable for the torts of the husband, committed in connection with his function as an elected, public officer, where the wrongful act has no connection with the community and the community receives no benefit therefrom. 31 C.J., Husband and Wife, § 1198; 41 C.J.S., Husband and Wife, § 523; 27 Am.Jur., Husband and Wife, Sec. 487; Annotation, 12 A.L.R. 837; Day v. Henry, 81 Wash. 61, 142 P. 439; Bice v. Brown, 98 Wash. 416, 167 P. 1097; Fidelity & Deposit Co. v. Clark, 144 Wash. 520, 258 P. 35. The rea-

soning underlying the rule is that a person, elected to a public office, necessarily, must individually perform its duties and accept its responsibilities. The community cannot act as a public officer, and, therefore, is not liable for the torts of the husband, committed in the performance of his official duties.

 In the present case, the basic obligation of the defendant, Lyall L. Garrison, to the County was for embezzlement, or misappropriation of, or failure to account for, public funds in his custody. It is a claim sounding in tort. The community was not liable to the County, and it is not obligated to reimburse plaintiff, surety, on account of its payment of the County's claim. The agreement, which Mr. Garrison made in his bond application, to reimburse the plaintiff for any loss it might suffer, did not change the situation in that regard. It merely converted to express, written form what would otherwise have been an implied promise of the principal to reimburse the surety. It did not impose liability on the marital community. Fidelity & Deposit Co. v. Clark, supra, squarely so holds, and no case to the contrary has been called to the Court's attention.

In its complaint, the plaintiff prays for judgment against each of the defendants, individually, but there is no evidence in the record upon which any liability of defendant, Georgia C. Garrison, could be predicated. Clearly, plaintiff is not entitled to recover judgment against her.

Judgment will be for the plaintiff, against defendant, Lyall L. Garrison, but not against defendant, Georgia C. Garrison, or against the marital community, in the sum of $13,897.26, together with reasonable and necessary expenses, incurred by the plaintiff in connection with the bond. Findings of fact and conclusions of law may be prepared in accordance with this opinion. Entry of judgment will await their settlement and signing.